The next case today is Arius Daniel Benrose de Graca v. Merrick B. Garland, appeal number 20-1607. Attorney Weber, please introduce yourself for the record and proceed with your argument. Good morning, Attorney Robert Weber on behalf of the petitioner. Your Honor, I'd like to ask to reserve two minutes for rebuttal. You may. Thank you, Judge. May it please the Court, I'll go over the facts briefly. On September 26, 2016, the petitioner, Arius de Graca, was convicted of driving without the consent of the owner, pursuant to Rhode Island General Laws 31-9-1. In removal proceedings in the Boston-Massachusetts Immigration Court, the immigration judge found that his conviction was categorically a theft offense, pursuant to Immigration Nationality Act Section 101-A43-G. Mr. de Graca appealed to the Board of Immigration. Well, the Immigration Court's finding made Mr. de Graca ineligible to apply for cancellation of removal or any other relief for removal that he might otherwise be eligible for. Mr. de Graca then appealed to the Board of Immigration Appeals to affirm the immigration judge's decision. Essentially, what the Board's decision boiled down to was that Mr. de Graca could not prove that there was a realistic probability that the, one, that the Rhode Island General Laws actually would criminalize actions which fall out of the generic definition of a theft offense under federal law, and two, that he could not show that the Rhode Island General Law would punish de minimis conduct. Both the government and the Board concede that should Mr. de Graca be able to show that the Rhode Island General Law would punish de minimis conduct, then it would no longer be a theft offense. That's a matter of BZS 22INN Decision 1346. Now, what the Board then goes on to say and what the government argues is that because Mr. de Graca could not show any specific examples of the Rhode Island law being applied to de minimis conduct, therefore, the Rhode Island law would not ever be applied to de minimis conduct. Counsel, the cases, in talking about de minimis conduct, the cases talk about something called glorified borrowing, where somebody may be given permission to take a vehicle for a certain period of time, but they keep it longer. They're given permission to take a vehicle certain places, but they go other places. What evidence were you able to provide that this Rhode Island statute was ever applied in those kinds of circumstances which might meet the definition of glorified borrowing, which I gather is an example of de minimis conduct. Is there any evidence that Rhode Island has prosecuted cases like that? Yes, Your Honor. I think the government points out a few cases, and we point out one in specific. We point out State v. Haney. Mr. Haney had been accused of assault by his girlfriend. He then took her car and drove it away from the scene. It was later found he had no intention to steal her car or keep it for any period of time. State v. Malmstrom, Mr. Malmstrom had paid a deposit for a car that was in a dealership parking lot. He then took the car and offered the owner a substantially lower amount to purchase the car, then returned it to the parking lot. In State v. Coleman, the government discusses that length in a footnote. It's a little bit of a different situation. The girlfriend of one of the co-defendants in that case had actually brought the co-defendants to a rental car company, rented a car for them, left the rental car company before they even took possession of the car. They then took the car and used it for what I would say was an unauthorized use and committed some criminal acts after the fact. She then found the car at a police station. I would liken that case to the Fourth Circuit case in Castillo v. Holder where we've argued that the Virginia statute at issue at the Fourth Circuit is identical to the Rhode Island statute. In Castillo, the Castillo court finds a case in Virginia Commonwealth, I believe the case is Medlin, where a tow truck driver, again, a statute virtually identical to the language in the Rhode Island statute, specifically with this one sentence which says, with intent temporarily to deprive the owner thereof of his possession thereof without intent to steal the same. The tow truck company allows the employee to take the tow truck to pick up medicine. The employee then, later that night, tows a car without the company's permission. He is then convicted under that statute, again, which is identical to the Rhode Island statute that Mr. DeGrasse was convicted under. And the Castillo court said that was a de minimis conduct. Now, the other examples I can point to the court is one in Castillo, again, they're in Virginia. It's a state eight times the size of Rhode Island. Castillo, the Fourth Circuit points out that the difficulty in finding specific examples in a state as large as Virginia, where the government and the board would hold Mr. DeGrasse to that standard of finding a specific example in a state as small as Rhode Island. Now, the Fourth Circuit said this, and this court, in fact, said this in White v. Lynch, 807 F. 3rd 463, that the problem with the argument that you have to find a specific example is that, quote, while finding a case on point can be telling, not finding a case on point is much less so. This logic applies, and in this case, it was a Connecticut assault statute, where convictions for assault in Connecticut, much like convictions in Rhode Island for all kinds of cases, they might not generate readily available records. For instance, someone might go to a diversion program and have the case later dismissed. They may plead no low contendere in Rhode Island and a year later have the case dismissed and expunged. There's not this plethora of evidence readily available, whether it be appellate decisions or even availability to find this stuff in the court records, police reports and things like that, where we can actually come up with specific examples of de minimis conduct. Evidence of prior convictions does allow the court to have some understanding of how the statute is being interpreted. What standard would you have us apply? Your Honor, I think that, for one, I think that the three cases cited by the government that I've decided here, I think that they do consist of de minimis conduct. Again, that's never been decided at this court or any other court, but in Rhode Island, for instance, the statute at issue here, you come up with about 15 cases that just mention the statute, four of which are this Coleman case that went up and down for various reasons to the Supreme Court, back to our Superior Court. Now, I would say that in this case, we can use the one example that we have from Virginia. Again, a much larger state, they came up with one example where it was found to be de minimis conduct, the tow truck case, because the statutes are essentially the same. Do you have any case that has held that? I'm sorry, Your Honor, can you say that again? I'm just wondering if you have any authority that has held that you can sort of go to states with identical statutes or jurisdictions with similar statutes in order to sort of make the effort to prove that it is being applied sort of to this de minimis conduct. Yes, Your Honor, I understand the question. How I would answer the question is this, is that this all is a realistic probability approach. So I think that Mr. DeGrasse should be able to go outside of his jurisdiction in order to try and make that showing that there's a realistic probability. Because otherwise in Rhode Island, it'd be virtually impossible to find conviction records that match up exactly to your case, whether it be the same statute or fact pattern, whatever it may be. So I think that, yes, we should be able to go outside of jurisdictions in order to make that realistic probability showing. Thank you. Thank you. Attorney Weber, please mute your audio and video. Attorney Lott, please unmute your audio and video and proceed with your argument. Good morning. May it please the Court, Melissa Lott on behalf of the United States Attorney General. The Court should deny the petition for review in this case because the Board of Immigration Appeals correctly found that petitioner's conviction under Rhode Island General Laws 3191 for driving without the consent of the owner or lessee is categorically an aggravated felony theft offense. This court has already held that the board's definition of a theft offense is entitled to Chevron deference. And just to review, that definition is the taking of or exercise of control over property without consent whenever there is a criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent. And the board and circuit courts have provided examples for types of statutes and conduct that would fall outside of the generic definition. And one is where a statute lacks an intent to deprive. So, for instance, in matter of VZS, the board gave the example of the prior California joyriding statute that required a driving without consent, but it lacked an intent to deprive the owner of title or possession of the vehicle. It simply required a general intent to temporarily use or operate the vehicle. Another example is from an 11th Circuit decision called Jagernoff, where the 11th Circuit distinguished between a statute that had two subsections. One required an intent to deprive, and one just had an intent to appropriate use. And so this intent to temporarily deprive that's in the Rhode Island statute, that meets the generic definition of theft, and it sets it apart from statutes that lack such an intent. The other way is that, as in the Fourth Circuit Castillo decision, and the board noted in this decision, that the Virginia statute at issue in Castillo, it required an intent to temporarily deprive, but it had been applied where someone had permission to use a vehicle, but just used it for purposes outside of the scope of the authorized purpose or kept it longer than allowed. And there's just no example in Rhode Island law that's similar to that. Do you have any authority for the proposition? Oh, I'm sorry. Please go ahead. Go ahead, please. I asked this question to the policy council, but do you have any authority for the proposition that we are limited to the jurisdiction in which the law is to look for the examples? Why can't we go to Virginia on an identical statute to say, well, there is a prosecutor somewhere that would prosecute that crime in that fashion? So why couldn't we use that? Is there any authority that would stop us from doing that? Well, Your Honor, I'm not aware of authority addressing that specific question, but I would say that the cases on the application of the realistic probability test, so the Supreme Court decisions in Duenas-Alvarez and Moncrief, and the First Circuit's decision in Burghardt, they all recognize that in order to show that a statute would actually be applied in an overbroad manner, that the individual would have to come forward with a case showing that it's applied because theoretical overbreadth isn't enough. And so I think that that shows that the court can't look to what other jurisdictions have done because there has to be a realistic probability that Rhode Island actually would prosecute that sort of overbroad conduct, and you can't establish that by looking at what Virginia does. Is there something different about prosecutors in Rhode Island as opposed to prosecutors in Virginia? I think that it goes back to the Rhode Island statute and what it requires and how it's been applied and the way that the realistic probability test works is to see what already exists and not… I don't think that we can hypothesize about how this statute might be construed when we can see that it's been applied only to, you know, where there is a lack of consent and where there is an intent to temporarily deprive. And the cases, the Rhode Island cases, they don't show that it's been applied where the, you know, a permission was given and then the scope of that permission was exceeded, for example. And the Rhode Island statute itself actually, it notes that consent on a prior occasion to the taking or driving of a vehicle, that you can't presume or imply that consent on a separate occasion would be given. And so I think that we just have to look at the language of the statute and the Rhode Island cases and just none of them are like the cases cited in the Fourth Circuit Castillo decision. And I would note that in Castillo, there were more than one, you know, state cases construing it that way. And we just don't see that with Rhode Island law. I thought Appellant said there are three or four cases under Rhode Island law that they're, I guess they led to recorded and explained decisions, which do show prosecution for conduct that could be considered de minimis under the federal statute. Is he wrong in saying that there are such cases? Yes, Your Honor, for the cases that he referred to, I heard him refer to Haney, Malstrom, and the Alston-Coleman cases. And Haney was the case where it was the defendant assaulted his girlfriend and then drove her vehicle without consent. And that case doesn't, that case was really, the decision in that case was about the assault convictions. And so there aren't really any facts that elucidate anything beyond the statutory requirements. But we know by statute that he had to have driven the car without consent and with the intent to temporarily deprive the victim of the car temporarily. And so beyond that, I mean, the only, that's just an example of the statute being applied where the defendant and the victim had a relationship. It doesn't tell us anything about, you know, de minimis takings. With Malstrom, that was the case where an employee of an auto body shop took a car without permission from the sales lot after he'd paid a down payment for the car, but he had not purchased the car. And he did not have permission to take the car off the lot. And he did take the car off the lot. And then later on tried to get the bill of sale from the owner for $50. And then the owner declined. And that defendant did ultimately return the car to the lot. But he took the car without consent and with the intent to temporarily deprive. And he did not have permission, so he wasn't exceeding the scope of a permission that was granted, like the Castillo cases. With the Alston and Coleman cases, the facts there, it's a bit convoluted and unclear, but there was a rental car involved. It does appear that there was another car involved later on as well. But I think that what's notable about that case is that the defendant who had permission to drive the rental car was on the rental car agreement. He was not convicted of the driving without consent statute. So I think that none of these cases demonstrate a realistic probability that this Rhode Island statute has been applied in an overbroad way. Implicit in that assumption is that unless we can get a case from the state Supreme Court that we're never going to know. Your Honor, I think that this is a statute. The statute itself meets the generic definition because it requires the taking or exercise of control without consent, and it requires an intent to temporarily deprive. I'm sorry, just to just to sum up that if the state, if it were to be applied in an in an overbroad manner, that's something that the petitioner would have to establish under the realistic probability test, and he has not done so. Thank you. Thank you, Counselor. Attorney Lott, please mute your audio and video. Attorney Weber, please unmute your audio and video and proceed with your rebuttal time. Attorney Weber? Yes. Okay. I can't see his camera. Judges, can you? No. Could you re-toggle again? Yes. Your camera. I can't find him. He's there. I don't see him. I don't see him either.  There you are. Okay. Okay, thank you, Your Honor. I would just bring up a few points, and I think one is that the realistic probability test and whether or not the Rhode Island statute covers de minimis conduct, I think just by reading the briefs and hearing the argument is that it is a matter of opinion. It's a matter of degree. So what I would say is in the Alston and Coleman cases where Mr. Alston walks right up to the rental car counter with his girlfriend and then Mr. Coleman drives the car while Mr. Alston's in it or not, that's clearly de minimis. It's clearly an unauthorized use, just like the tow truck incident in Castillo. Now, what I would also say is that if we're looking to apply just one state's jurisdiction to a specific case and not allowing us to go outside jurisdiction, that puts citizens of Rhode Island or those convicted of crimes in Rhode Island at a serious disadvantage compared to those convicted of crimes in other states. If you're convicted of a crime, for instance, in Virginia, population eight times the size of Rhode Island, clearly more likely that you're going to come up with an appellate decision that spells out facts that may assist you in proving the de minimis conduct beyond a realistic probability. If you're in New York, California, even larger possibilities. So to disadvantage someone in Rhode Island and say, no, you have to prove, you have to show actual cases to prove this realistic probability, I think it's lies in the face of due process. I think that everyone in the country should be treated the same. Now, again, with the de minimis conduct, Maelstrom, Mr. Maelstrom and Steve Maelstrom, he paid a deposit. Yes, he took the car off the lot. He then returned it when he made the lowball offer to buy the car. He then returned the car. The car was on a parking lot in a dealership. He did not take the car from the owner. It was an unauthorized use. He should have had the car, but it was, again, de minimis. That's time, counsel. I would just say that this court should grant the petition for review. Thank you, Your Honor. Thank you. That concludes argument in this case. Attorney Weber and Attorney Lott, you should disconnect from the hearing at this time.